IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHERRY LUCKERT, Personal Representative of the Estate of TROY SAMPSON, Deceased, | ) ) ) ) | Case No. 8:07cv-5010 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **MEMORANDUM BRIEF OPPOSING DEFENDANT'S MOTION IN LIMINE** |
| COUNTY OF DODGE, et al., | ) ) | **TO STRIKE PLAINTIFF'S EXPERT** |
| Defendants. | ) | |

Sherry Luckert, Plaintiff in the above-captioned matter, by and through her counsel of record, submits this Memorandum Brief Opposing Defendant's Motion *in Limine* to Strike Plaintiff's Expert:

**Standard of Review: Rule 702 and *Daubert*[1]**

Federal Rule of Evidence 702 provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of all opinion or otherwise.

Rule 702 allows for the admission of expert testimony from a wide range of fields of expertise. *Metropolitan East St. Louis Equal Housing Opportunity Council v. Gordon A. Gundaker Real Estate Co.*, 130 F. Supp.2d 1074, 1080 (E.D. Mo. 2001). It provides a safeguard to prevent confusing a jury with so-called "junk science" by building in a reliability factor; but Rule 702 does not, however, set forth guidelines for assessing reliability. *Id.*

---

[1] ***Daubert*** is directed at the exclusion of junk science – it is not a general foundational objection. As it is the horse Defendants chose to ride as a means of seeking Hayes' exclusion, however, we will defend this Motion according to ***Daubert*** analysis rather than general foundational analysis.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra*, the United States Supreme Court focused on the admissibility of scientific expert testimony and discussed certain specific factors which would be helpful in determining the reliability of a particular scientific theory or technique. That focus was broadened in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), wherein the Supreme Court concluded that a trial court's "gatekeeping" responsibility applied to all expert testimony, not just testimony based on scientific knowledge; and that a trial court may consider one or more of the factors suggested in *Daubert* in determining the reliability of the proffered testimony. *Kumho Tire*, 526 U.S. at 141. Those factors include:

1) whether the expert's methodology has been tested;

2) whether the technique has been subjected to peer review and publication;

3) whether the technique has a known or knowable rate of error; and

4) whether the technique has been generally accepted in the proper scientific community.

*Daubert*, 509 U.S. at 593-94; *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1207-08 (8th Cir. 2000).

These factors are not exclusive, and may not be particularly pertinent to a court's reliability assessment. *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1082 (8th Cir. 1999). The *Kumho Tire* court acknowledged that other considerations might be more pertinent in assessing the reliability of expert evidence in any particular case. *Kumho Tire*, 526 U.S. at 150-51. A trial court is granted considerable flexibility in adapting its analysis to fit the particular facts of a case. *Jaurequi, supra,*, 173 F.3d at 1082 ("Rather, we conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is

reliable."). In the end, "the polestar ... must always be scientific validity – and thus the evidentiary reliance and reliability – of the principles that underlie a proposed submission." *Id.* at 1082 (*quoting Daubert*, 509 U.S. at 593).

In the end, this inquiry is designed to address "[t]horny problems of admissibility [which] arise when an expert seeks to base his opinion on *novel or unorthodox techniques* that have yet to stand the tests of time to prove their validity." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995) (emphasis added). In construing *Daubert*, and considering the types of "junk science" that warrant exclusion under *Daubert*, emphasis focuses properly on the discretion of the trial court rather than on some formula or calculation or admissibility:

> First, ... *Daubert* reinforces the idea that there should be a presumption of admissibility of evidence. Second, it emphasizes the need for flexibility in assessing whether evidence is admissible. Rather than using rigid "safeguards" for determining whether testimony should be admitted, the Court's approach is to permit the trial judge to weigh the various considerations pertinent to the issue in question. Third, *Daubert* allows for the admissibility of scientific evidence, even if not generally accepted in the relevant scientific community, provided its reliability has independent support. Finally, the Court expressed its faith in the power of the adversary system to test "shaky but admissible" evidence, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable.

*Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995). *Daubert*'s "gatekeeper role" is not intended to supplant the adversary system or the role of the jury; rather, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking the afore-described "shaky but admissible" evidence. *Wellman v. Norfolk & Western Ry. Co.*, 98 F. Supp.2d 919, 924 (S.D. Ohio 2000).

In assessing the reliability and relevance of proffered expert testimony, a court should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence; "and

3

the Court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." ***Junk v. Terminix Int'l Co.***, ___ F. Supp.2d ___, 2008 WL 4183533 at *3 (S.D. Iowa Sept. 11, 2008).

## ADMISSIBILITY OF HAYES' TESTIMONY UNDER *DAUBERT*

A.    "Is the Testimony Based Upon Sufficient Facts or Data?"

Defendant's primary avenue of attacking the admissibility of Hayes' testimony is pursuant to ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579 (1993). Its first argument, summarized, is that Mr. Hayes had insufficient information to support his opinions, apparently because standards he referenced in his February 2009 affidavit were voluntary and not mandatory. In response to that argument, Hayes has clarified:

> Review of my [February 2009] affidavit will indicate that I never stated that the Dodge County Department of Corrections was 'required' to abide by either the ACA or NCCHC standards. The affidavit clearly state that several nationally-recognized correctional standards (i.e., ACA and NCCHC) require that correctional facilities maintain an adequate suicide prevention policy. **It is common knowledge throughout the correctional community that, by their very nature, these national correctional standards are voluntary.**
>
> *    *    *    *    *    *
>
> It is my 29-year experience in assisting correctional facilities in developing and revising suicide prevention policies that, when state jail standards do not address the issue [as the Nebraska Jail Standards do not], jurisdictions look elsewhere for guidance in policy development, oftentimes relying upon the national standards of the ACA and/or NCCHC.

(***2010 Hayes Affidavit*** at ¶¶ 17 - 19 (emphasis added).)[2]

---

[2] Since he drafted his 2009 Affidavit, Mr. Hayes has reviewed additional evidence, to include the depositions of the individual Defendants. The additional evidence has not changed the opinions he expressed in his 2009 Affidavit – it has provided additional support for those opinions, but has not caused Mr. Hayes to withdraw or qualify any of the opinions he expressed

4

B.     "Is the Testimony the Product of Reliable Principles and Methods?"

Summarized, Defendants' second *Daubert-*based complaint is that Mr. Hayes "does not indicate what principles or methods were used in coming to his conclusion." In support of that argument, Defendants have cited decisions in which courts limited Mr. Hayes' testimony. The same Westlaw search that reveals those decisions, however, also reveals decisions in which courts credit and do not limit Mr. Hayes' testimony. *See, e.g., Mulkern v. Cumberland County*, 2001 WL 1519409 (D. Me. 2001) (in case wherein Mr. Hayes testified for the defense, finding, over plaintiffs' objection, that "Hayes' qualifications as well as his review of Maine Department of Corrections Detention and Correction Standards and "numerous jail medical and mental health policies of the Cumberland County Sheriff's Office" ... suffice to lay such a foundation"); *Shaw v. San Joaquin County*, 2006 WL 5187632 (E.D. Cal. 2006) (denying *Daubert/Kumho* motion relative to Mr. Hayes); *Stewart v. Waldo County*, 2004 WL2397403 (D. Me. 2004) (accepting affidavit of Mr. Hayes submitted by the defense, and sustaining defense motion for summary judgment); *Estate of Lyche v. Washington County*, 2003 WL 23957137 (D. Or. 2003) (accepting affidavit of Mr. Hayes submitted by plaintiff and characterizing Mr. Hayes' explanation of his studies as "significant"). It would appear that Mr. Hayes' increased study and experience (and perhaps increased experience in explaining his work to courts) in the years since the decisions cited by Defendants were rendered have favorably added to his qualifications as an expert witness.

---

in his 2009 Affidavit. **To the extent that Defendants complain of "new" opinions, we would observe that we deposed Defendants' expert witness, Ron Martinelli, on March 15, 2010, and would ask that in the event that this Court finds that Mr. Hayes has submitted "new" opinions, they may be considered rebuttal to opinions offered by Martinelli in his amended report and his March 15, 2010 deposition**.

In *Landeros v. Barbieri*, 1998 WL 28067 (S.D.N.Y. 1998), a personal injury case, the plaintiff sought to call an expert psychologist to testify that a causal connection existed between the plaintiff's psychiatric disorder and the collision in which the plaintiff was injured. The defendant raised a *Daubert* challenge to the psychologist's testimony, arguing that the psychologist's testimony was unreliable primarily because of the psychologist's lack of specialization in psychotic disorders, which is what the psychologist had diagnosed the plaintiff to suffer from. In response, the plaintiff contended that because the defendant was fundamentally taking issue with the psychologist's qualifications (despite that the defendant had couched its complaint in the form of a *Daubert* reliability challenge), the *Daubert* factors were somewhat inapposite to disposition of the challenge. *Id.* at *2.

The District Court for the Southern District of New York agreed, noting that the *Daubert* factors were "of little utility" where the challenge was primarily to the expert's qualifications; the court noted that, faced with a more orthodox form of methodology, it would focus more on the "reliability and fit" of the testimony. *Id.* at *2. It then found that "so long as the expert stays within the reasonable confines of his subject area, the expert can fairly be considered to possess the specialized knowledge required by Rule 702." *Id.* at *3. Noting that the expert in question held a doctorate degree, belonged to a number of professional associations in his field and otherwise had experience in the field of psychology, it determined that the psychologist "possess[es] skill or knowledge greater than the average layman" when it came to the assessment of psychological disorders. *Id.* The court concluded that the defendant was free to avail itself of the tools prescribed in *Daubert* – "vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof" (*quoting Daubert*, 509 U.S. at 596) – in attempting to convince the trier of

6

fact that the psychologist's opinion was unreliable.

That analysis and conclusion apply to Defendants' challenge to Mr. Hayes' expert testimony. While Defendants have couched their challenge as one of ***Daubert*** reliability, fundamentally this is a challenge of Mr. Hayes' qualifications. The record shows, however, that:

- \*  Mr. Hayes has worked in the field of suicide prevention in correctional facilities since 1983. (***2010 Hayes Affidavit*** at ¶ 4.)

- \*  He serves as a Federal Court Monitor, in the monitoring of suicide prevention practices in correctional facilities that are under court jurisdiction. (***2010 Hayes Affidavit*** at ¶ 3.)

- \*  He has served as project director for studies funded by the United States Department of Justice on the topic of suicide in correctional settings. (***2010 Hayes Affidavit*** at ¶ 6.) He is a suicide prevention consultant to the Special Litigation Section of the Civil Rights Division of the United States Department of Justice, again directed at the topic of suicide in correctional settings. (***2010 Hayes Affidavit*** at ¶ 5.)

- \*  He edits a quarterly publication devoted to suicide prevention issues that is funded by the United States Department of Justice, as well as 60 other publications on the topic of suicide prevention. (***2010 Hayes Affidavit*** at ¶¶ 6 - 7.)

- \*  He has reviewed more than three thousand cases of suicide in correctional settings as a function of his research, technical assistance and consulting work. (***2010 Hayes Affidavit*** at ¶ 10.)

Unlike defense expert Martinelli (who has testified on suicide prevention in jails/prisons maybe one time before this case (***Martinelli depo.*** 65:18.), Lindsay Hayes' expertise in the topic of suicide prevention in the correctional setting has been acknowledged by our courts. ***See Servantez v. County of Sacramento***, 2009 WL 2153812 (E.D. Cal. 2009) (referring to Hayes as "a nationally renowned expert in the field of suicide prevention in jails"). These qualifications constitute "skill or knowledge greater than the average layman"; as in ***Landeros***, "so long as [Mr. Hayes] stays within

7

the reasonable confines of his subject area, [Mr. Hayes] can fairly be considered to possess the specialized knowledge required by Rule 702." *See, e.g., Landeros* at *3.

There is no magic and no controversy behind the methodology Hayes employed to reach his opinions. What Hayes has done does not approach "[t]horny problems of admissibility [which] arise when an expert seeks to base his opinion on novel or unorthodox techniques that have yet to stand the tests of time to prove their validity." *See, e.g., McCullock v. H.B. Fuller Co.*, 61 F.3d at 1042. As such, this Court should find that questions concerning Mr. Hayes' qualifications relate to weight rather than to admissibility and reject Defendants' *Daubert* challenge. *See, e.g., Lappe v. American Honda Motor Co.*, 857 F. Supp. 222, 226 (N.D.N.Y. 1994) ("Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.").

C.     "Has Hayes applied the principles and methods reliably to the facts?"

This argument from Defendants is no less specific than Defendants claim Mr. Hayes' affidavit to be: arguing that a court that excluded Mr. Hayes' testimony had "also pointed out other deficiencies present in Hayes' testimony," and claiming that "the same deficiencies are present in Hayes' affidavit prepared for this case," Defendants do not specify what those "deficiencies" are. If the argument is directed to the *Brown* court's concern that Mr. Hayes had insufficient information about the national suicide rate, we would note that we have not asked Mr. Hayes to compare the suicide rate in the Dodge County Correctional Center to the national rate for suicides in correctoinal setting. It is hard to otherwise respond to this argument, because of its vagueness.

D.     "Does the knowledge assist the trier of fact to understand the evidence or to determine a fact in issue?"

Again, Defendants complain that Mr. Hayes has claimed that ACA and NCCHC standards

8

are mandatory – a claim that, if proven, would still only go to weight rather than to admissibility and would be appropriately explored on cross-examination; and that misrepresents the testimony in Mr. Hayes' 2009 Affidavit. The opposing party's interpretation of language in an affidavit, coupled with the claim that "therefore, because of my interpretation on this point, he cannot survive *Daubert*," just is not a basis for excluding an expert witness under *Daubert*.

Defendants' other claim in this section, that Mr. Hayes' opinions "concern matter that arguably lie within the understanding of the average lay person, making expert testimony on this subject unnecessary," begs a goose-gander ruling that if Mr. Hayes' testimony is simply unnecessary because jurors can figure it out for themselves, then the testimony of defense expert Ron Martinelli is just as unnecessary and should be excluded as well.

## WAIVER OF TIMING ISSUES

We submitted a signed affidavit from Hayes, setting forth his qualifications as well as his opinions and the bases for his opinion, on February 17, 2009, as part of our Evidence Index in Opposition to Defendants' Motion for Summary Judgment (Filing #91). Defendants objected to Hayes' affidavit (Filing #96), and this Court overruled that objection. Thereafter, we admittedly felt that the early disclosure of Hayes and his opinions would suffice as an early disclosure of our expert witnesses for this case.

At least until March 1, 2010, Defendants' actions supported our feeling that we had complied with Rule 26 through our early disclosure of Hayes. Defendants never complained that they felt that Hayes' affidavit was non-compliant with FED. R. CIV. P. 26, or that it left Defendants unprepared to cross-examine Hayes at trial. In fact, the defense expressed via e-mail:

Since I am not deposing Mr. Hayes until April 22, via telephone, I'd like to extend

>the date for filing daubert motions in limine until 30 days after his depo. Are you okay with that?

Nor did Defendants' expert, Ron Martinelli, complain that he was unable to respond to Mr. Hayes' affidavit testimony because it was too vague or because the bases for his opinions were too unclear.

Whatever complaints Defendants now raise relative to not receiving a report are not consistent with Defendants' apparent comfort before March 1, 2010 that Mr. Hayes' affidavit complied with Rule 26. Defendants indicated that they would depose Mr. Hayes, planned to do so, and then changed course as a result of Mr. Hayes' request for prepayment. There is no "unfair surprise."

## Conclusion

This Motion should not be evaluated as a serious attempt to disqualify Lindsay Hayes, LUCKERT's expert witness, from testifying at trial. With due respect to defense counsel – whose courtesy and cooperation the undersigned has greatly appreciated – we would suggest (with a wry smile) that this Motion may be evaluated as a less-than-serious submission, filed on the day of this Court's deadline for such submissions (although plaintiff's counsel had stipulated to extend the filing deadline as of February 17 at defense counsel's request, which defense counsel may possibly have forgotten). Our request would be that this Motion be DENIED.

SHERRY LUCKERT, Personal Representative of the Estate of TROY SAMPSON, Deceased,
Plaintiff,

           /s/ Maren Lynn Chaloupka
By:_____
Maren Lynn Chaloupka, NSBA # 20864
CHALOUPKA, HOLYOKE, HOFMEISTER, SNYDER & CHALOUPKA, LLC
1714 Second Avenue
Post Office Box 2424
Scottsbluff, NE 69361
Telephone: (308) 635-5000
Facsimile: (308) 635-8000
E-mail: mlc@chhsclaw.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was sent via CM/ECF Filing and Regular US Mail to the following on this 2nd day of April, 2010:

Jennifer Tomka
BOUCHER LAW FIRM
West Gate Bank Building, Suite A
5555 South 27th Street
Lincoln, NE 68512

           /s/ Maren Lynn Chaloupka
           _____